IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PORTS OF THE DELAWARE MARINE      :      CIVIL ACTION
TRADE ASSOCIATION                 :
                                  :
        v.                        :
                                  :
LONGSHOREMAN'S ASSOCIATION,       :
LOCAL 1242                        :      NO. 13-4401


MEMORANDUM

McLaughlin, J.                                    July 28, 2014

        This is case is brought by an association of employers

on the ports of the Delaware River alleging that a local union,

which represents the interests of the employees of the ports of

the Delaware River, is violating Title I of the Americans with

Disabilities Act by implementing a "100% healed policy" with

respect to employees who are "out" on disability or workers'

compensation.  The association, the Ports of the Delaware Marine

Trade Association ("PMTA"), alleges that the union, the

International Longshoreman's Association, Local 1242 ("the

Union"), employs a policy under which employees who are out on

disability or workers' compensation cannot return to work until

they can obtain a full medical clearance.  PMTA claims that its

members are injured in that they have paid workers' compensation

or disability benefits to employees who could have returned to

work, and they have been prevented from engaging in interactive

processes with employees to find reasonable accommodations that would allow them to return to work.

The Union has filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that the association lacks standing to bring this suit. The Court agrees that the plaintiff lacks Article III standing and statutory standing, and will therefore grant the motion to dismiss.

I.   Facts Alleged in the Complaint

The Ports of Delaware Marine Trade Association ("PMTA") is an incorporation of several companies. Its purpose is "to promote the interests of Delaware, Southern New Jersey, and Southern Pennsylvania Ports." PMTA negotiates and administers collective bargaining agreements on behalf of various employers including Delaware River Stevedores, Inc.; Greenwich Terminals, LLC; J.H. Stevedoring Co.; Murphy Marine Services, Inc.; M.J. Rudolph/Kinder Morgan; Stocklin & Sons Trailer Service; and Tri-State Bulk Handling (hereinafter referred to as "Member Employers"). Compl. ¶ 2, 4.

The International Longshoreman's Association ("ILA") represents employees engaged in work involving containers and "ro ro operations" and bulk and break cargoes on the Gulf and East Coasts. Local 1242 ("the Union") is a local agency for the

ILA located in Philadelphia, Pennsylvania.  The Union represents employees referred to as "checkers," who match cargo to paperwork.  Id. ¶¶ 6-8.

PMTA, on behalf of its Member Employers, is a party to a collective bargaining agreement with the Union.  The Union operates a hiring system which is the exclusive method of providing employees to Member Employers.  The Member Employers can only hire employees who are referred by the Union through the hiring system.  The Union has sole discretion and authority to refer an employee to work for a Member Employer.  The Union also has sole access to any documentation used in the process of referring employees to work for Member Employers.  Id. at ¶¶ 15-19.

The Union has a policy or practice of only referring prospective employees to Member Employers who have no restrictions on their ability to work.  This means that the Union will only refer prospective employees who have a full medical clearance.  Even if there is a position available that could accommodate the medical restrictions of an employee, the Union will only refer another employee who has no restrictions. Id. ¶¶ 20-21.

The employees who could be accommodated in a position but who are not referred to the Member Employers are either out

on workers' compensation or on non-work-related disability.[1]

Some or all of these employees are disabled under the ADA.  PMTA

and the Member Employers believe they can provide work to at

least some of these employees by offering reasonable

accommodations to allow the employees to perform the essential

functions of the job, even if the employees do not have full

medical clearances.  Id. ¶¶ 26-27.


II.  Standards of Review

A.  Federal Rule of Civil Procedure 12(b)(1)

"A motion to dismiss for want of standing is . . .

properly brought pursuant to [Federal] Rule [of Civil Procedure]

12(b)(1), because standing is a jurisdictional matter."

Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007).

Rule 12(b)(1) motions are either facial or factual challenges.

CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008).  Here,

the Court interprets the defendant's Article III standing

argument to be a facial challenge to standing, as the

defendant's arguments are based on the allegations in the

complaint.  Id.  In reviewing a facial challenge, a court takes

the facts in the pleadings as true, construed in the light most

---

[1] In 2010-2011, approximately fourteen employees were out on
workers' compensation or disability.  In 2011-2012,
approximately ten employees were out on workers' compensation or
disability.  In 2012-2013, approximately eight employees were
out on workers' compensation or disability.  Compl. ¶¶ 23-25.

favorable to the plaintiff, and determines therefrom whether jurisdiction exists.  Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).  "On a motion to dismiss for lack of standing, the plaintiff bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."  Ballentine, 486 F.3d at 810 (internal quotation marks and citations omitted).

     B.   Federal Rule of Civil Procedure 12(b)(6)

     "A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state claim."  Baldwin v. Univ. of Pittsburgh Med. Ctr., 636 F.3d 69, 73 (3d Cir. 2011).  In evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts and reasonable inferences as true and construe the amended complaint in the light most favorable to the plaintiff.  Fowler v. UPMC Shadyside, 578 F.3d 203, 201 (3d Cir. 2009).  Legal conclusions and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not withstand a motion to dismiss.  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  Disregarding any legal conclusions, the court

should determine whether the facts alleged are sufficient to show that the plaintiff has a "plausible claim for relief."  <u>Id.</u>

III. <u>Analysis</u>

      The Union argues that neither PMTA nor the Member Employers have Article III standing because they are not "qualified individuals" under Title I of the ADA, and only qualified individuals have standing to bring suit.  Although the Union has characterized its argument as an Article III standing issue, the Union's argument is actually based on statutory standing principles.  "Constitutional standing is a question of the federal court's power to resolve a dispute, while statutory standing requires the Court to interpret 'whether Congress has accorded <u>this</u> injured plaintiff the right to sue the defendant to redress his injury.'"  <u>Edmonson v. Lincoln Nat'l Life Ins. Co.</u>, 777 F. Supp. 2d 869, 879 (E.D. Pa. 2011) (quoting <u>Graden v. Conexant Sys. Inc.</u>, 496 F.3d 291, 295 (3d Cir. 2007)) (emphasis in original).

      The Union's motion does not argue that PMTA has failed to establish the Article III standing requirements: injury, traceability, and redressability.  Rather, the Union's argument is that Title I of the ADA has not provided this plaintiff – PMTA – with a cause of action.  Nonetheless, because the Union did raise the issue of Article III standing, which PMTA

addressed, and because the Court has a duty to raise issues of
standing <u>sua sponte</u> if such issues exist, <u>see</u> <u>Steele v.
Blackman</u>, 236 F.3d 130, 134 n.4 (3d Cir. 2001), the Court will
analyze whether PMTA has Article III standing.  The Court will
also address the Union's main argument: that PMTA is not
eligible to file suit under Title I of the ADA.

    A.   <u>Constitutional Standing</u>

         PMTA is an association of various Member Employers.
PMTA does not argue that it has standing on its own behalf.[2]
Rather, PMTA argues that it has associational standing to bring
the ADA claim asserted in the complaint on behalf of the Member
Employers.  An association can bring a lawsuit on behalf of its
members even if the association itself has not suffered any
direct injury.  <u>Hunt v. Wash. State Apple Adver. Comm'n</u>, 432
U.S. 333, 342 (1977).  An association has standing when: (1) its
members would otherwise have standing to sue in their own right;
(2) the interests it seeks to protect are germane to the
organization's purpose; and (3) neither the claim asserted nor
the relief requested requires the participation of individual
members of the organization.  <u>Id.</u> at 343.

---

[2] In PMTA's opposition to the Union's motion, PMTA seems to
assert that it has standing on its own and that it also has
associational standing.  PMTA's argument for its own standing,
however, is based on the Member Employers' injury-in-fact.
Because PMTA does not argue that PMTA itself has suffered an
injury, PMTA has argued only associational standing.

1.    Individual Members of the Association Must Have
Standing

First, in order for an association to have standing to
bring suit, its individual members must have standing in their
own right.  Hunt, 432 U.S. at 343.  That is, at least one of the
members of the association must satisfy the tripartite Article
III standing test had it sued individually.  Hosp. Council of W.
Pa. v. City of Pittsburgh, 949 F.2d 83, 86-88 (3d Cir. 1991).
Thus, in order for PMTA to have associational standing: (1) at
least one of its Member Employers must have suffered an injury-
in-fact; (2) there must be a causal connection between the
Member Employer's injury and the Union's conduct; and (3) it
must be likely that the Member Employer's injury will be
redressed by a favorable decision.  Id.

PMTA argues that the Member Employers are injured in
two ways.  First, they are "monetarily injured because they
continue paying workers' compensation benefits and/or disability
benefits for employees who are out on workers' compensation or
disability but could be working for them."  Pl.'s Opp'n 4.
Second, PMTA argues that the Member Employers are injured
because they are "precluded from entering into the flexible,
interactive process of discussing possible accommodations with
disabled employees, as required by law."  Id.  PMTA seeks
damages for past harm for the Member Employers' overpayment in

8

workers' compensation benefits, as well as an injunction preventing the Union from continuing to carry out its 100% healed policy.

The allegations in the complaint do not demonstrate that any of PMTA's Member Employers have suffered an injury-in-fact that was caused by the Union's 100% healed policy. The complaint alleges that the Member Employers have paid workers' compensation and disability benefits to some employees, "some or all of those persons" are disabled under the ADA, and that PMTA and the Member Employers "believe that they can provide work to at least some of these employees." Compl. ¶¶ 22-27.

The injuries alleged are speculative. In order for the Member employers to have suffered these injuries, we must assume that some or all of the persons who are receiving disability or workers' compensation benefits from the Member Employers have desired or sought to return to work, but were prevented from doing so by the 100% healed policy. Although the complaint identifies a particular number of persons who received workers' compensation or disability benefits in 2010 through 2013, the complaint does not allege that any of these individuals tried to, or even desired to, return to work.

For the same reasons, the PMTA has not established causation or redressability. Without allegations that there are individuals receiving disability or workers' compensation

benefits from the Member Employers who seek or have sought to return to work, the Court is not convinced that the alleged injuries suffered by the Member Employers are fairly traceable to the 100% healed policy, or that injunctive relief provided by this Court would remedy the alleged injuries.

It is speculative whether the Member Employers' injuries are caused by the 100% healed policy, or whether they result from the independent decisions or circumstances of the persons on disability or workers' compensation leave.  It is also speculative whether injunctive relief would reduce the number of persons on such leave.  Based on the allegations in the complaint, it is just as plausible that those persons would continue to collect disability or workers' compensation benefits even if the barrier of the 100% healed policy were removed.[3]  See Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 39-43 (1976) (holding that the traceability and redressability requirements were not satisfied where injury and remedy were dependent on the actions of non-defendant hospitals).

---

[3] Although damages would remedy past overpayment of disability or workers' compensation benefits, the Member Employers do not have standing for their damages claim because the complaint does not sufficiently allege injury and traceability.

2.    The Interests Protected Must Be Germane to the
       Purpose of the Association

The second requirement for associational standing is
that the interests sought to be protected must be germane to the
organization's purpose.  <u>Hunt</u>, 432 U.S. at 343.  The Court is
also not convinced that this requirement is satisfied.  The only
allegation in the complaint that relates to PMTA's purpose is
that "PMTA is an incorporation of many companies to promote the
interests of Delaware, Southern New Jersey and Southern
Pennsylvania ports."  Compl. ¶ 2.

It is unclear to the Court how the interests sought to
be protected here – the Member Employers' financial interest in
not overpaying workers' compensation and disability benefits,
and the interest in engaging in the interactive process – are
related to the PMTA's purpose of promoting the ports of the
Delaware River.  The PMTA's opposition argues, without
explaining, that "clearly acting in compliance with the ADA is
promoting the interests of the Ports."  Pl.'s Opp'n 5.  The
PMTA's complaint does not contain any allegations regarding how
these interests are related.

The PMTA's opposition also argues that, "as PMTA
represents the Member Employers, it has an obligation to
represent them in matters where joint action is appropriate –
such as this lawsuit."  <u>Id.</u>  The PMTA is correct that an

11

association whose purpose is to "represent[], assist[], and speak[] for its members in matters where joint action is appropriate or . . . to resolve common problems" may have associational standing to represent its members in cases where joint action is appropriate.  Hosp. Council of W. Pa., 949 F.2d at 88-89.  The complaint does not allege that the PMTA's purpose is to represent the Member Employers in matters where joint action is appropriate, however.  The PMTA has not alleged enough in the complaint for the Court to conclude that the interests sought to be protected in this lawsuit are germane to the purpose of the PMTA.

> 3.   Neither Claim nor Relief Must Require
>      Participation of Individual Members in the
>      Lawsuit

Finally, in order for an association to have standing on behalf of its members, neither the claim asserted nor the relief requested must require that individual members participate in the lawsuit.  Hunt, 432 U.S. at 343.  The plaintiff does not need to show, however, that absolutely no individual participation will be necessary.  The need for individual participation by some association members is not an absolute bar to standing.  Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc., 280 F.3d 278, 283 (3d Cir. 2002).

"The Supreme Court has repeatedly held that requests by an association for declaratory and injunctive relief do not require participation by individual association members." Hosp. Council of W. Pa., 949 F.2d at 89 (citing Pennell v. City of San Jose, 485 U.S. 1, 7 n.3 (1988) and Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. Brock, 477 U.S. 274, 287-88 (1986)).  Damages claims, on the other hand, "usually require significant individual participation, which fatally undercuts a request for associational standing." Penn. Psychiatric Soc., 280 F.3d at 284.

Here, PMTA seeks both injunctive relief and damages. PMTA asks the Court to "make PMTA and Member Employers whole by providing compensation for losses occurred [sic], including but not limited to overpayment of workers' compensation benefits as a result of the Union's unlawful employment practices."  Compl. ¶ 36(D).  Determination of such damages would require participation of each Member Employer.  The Court would need to assess how much each Member Employer has overpaid in disability or workers' compensation to employees who were qualified disabled individuals that could have been accommodated by the Member Employers.  Because the claim for damages would require individual participation by all Member Employers, PMTA does not have associational standing to bring its damages claim.

Although this factor may not bar PMTA's request for injunctive relief, because the other requirements for associational standing are not met, PMTA lacks associational standing to bring its claims for both damages and injunctive relief.

B.   Statutory Standing

Even if the PMTA were able to amend the complaint to satisfy the Article III standing requirements, PMTA would not have a cause of action under Title I of the ADA.  Title I of the ADA provides: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  The Union argues that PMTA and its Member Employers lack standing to bring suit under Title I of the ADA because Title I only prohibits discrimination against "qualified individuals," and PMTA and its Member Employers clearly do not fall within that definition.

14

In a typical Title I case, in order to make out a
prima facie case for disability discrimination under Title I of
the ADA, a plaintiff must establish that he or she (1) has a
disability; (2) is a qualified individual; and (3) has suffered
an adverse employment action because of that disability.  Turner
v. Hershey Chocolate U.S.A., 440 F.3d 604, 611 (3d Cir. 2006).
Also, because Title I only protects "qualified individuals" from
discrimination, courts have often stated that only qualified
individuals may bring suit under Title I of the ADA.  See, e.g.
Ford v. Schering-Plough Corp., 145 F.3d 601, 605 (3d Cir. 1998)
(recognizing that, generally speaking, "Title I of the ADA
restricts the ability to sue under its provisions to a
'qualified individual with a disability'"); McKnight v. General
Motors Corp., 550 F.3d 519, 522 (6th Cir. 2008) ("'The plain
language of the Act thus allows only those who are "qualified
individuals" to bring suit.'"); Weyer v. Twentieth Century Fox
Film Corp., 198 F.3d 1104, 1108 (9th Cir. 2000) (same).

Looking to the enforcement provision of the ADA,
however, several courts have also held that relief under the ADA
is not limited to qualified individuals with a disability, and
that the ADA's enforcement provision confers standing on anyone
who meets the Article III standing requirements.  See, e.g.,
Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399,
405 (3d Cir. 2005) ("[T]he enforcement provisions of the ADA and

15

RA do not limit relief to 'qualified individuals with disabilities.'"); <u>MX Grp., Inc. v. City of Covington</u>, 293 F.3d 326, 334 (6th Cir. 2002) (recognizing that the enforcement provision of the ADA confers standing on "any person aggrieved" which "'evinces a congressional intention to define standing to bring a private action . . . as broadly as is permitted by Article III of the Constitution.'") (quoting <u>Innovative Health Sys., Inc. v. City of White Plains</u>, 117 F.3d 37, 47 (2d Cir. 1997).

The enforcement provision of the ADA provides that "any person alleging discrimination on the basis of a disability" has the same enforcement powers as provided by Title VII.[4]  42 U.S.C. § 12117(a).  The enforcement provision of Title VII, and therefore Title I of the ADA, provides a remedy to "any person claiming to be aggrieved."  <u>Id.</u>; 42 U.S.C. § 2000e-5(b), (f)(1).

The Supreme Court recently interpreted the standing requirements for "any person claiming to be aggrieved" under Title VII in <u>Thompson v. North American Stainless, LP</u>, 131 S.

---

[4] The enforcement provision of Title I of the ADA specifically provides: "The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment."  42 U.S.C. § 12117(a).

16

Ct. 863 (2011).  In that case, the petitioner, Eric Thompson,
sued his former employer for retaliation under Title VII.  <u>Id.</u>
at 867.  Thompson and his fiancé, Miriam Regalado, were both
employed by the respondent North American Stainless (NAS).  <u>Id.</u>
Thompson alleged that NAS fired him in order to retaliate
against Regalado after she filed a charge with the EEOC alleging
sex discrimination.  <u>Id.</u>  The Court addressed whether the "any
person aggrieved" language in the enforcement provision of Title
VII provided a cause of action to Thompson.  <u>Id.</u>

      The Supreme Court rejected the Sixth Circuit's
interpretation that "a person claiming to be aggrieved" was
"merely a reiteration of the requirement that the plaintiff have
Article III standing."  <u>Id.</u> at 869.  The Supreme Court noted
that:

> If any person injured in the Article III sense by a
> Title VII violation could sue, absurd consequences
> would follow.  For example, a shareholder would be
> able to sue a company for firing a valuable employee
> for racially discriminatory reasons, so long as he
> could show that the value of his stock decreased as a
> consequence.

<u>Id.</u>  With this in mind, the Court concluded that "the term
'aggrieved' must be construed more narrowly than the outer
boundaries of Article III."  <u>Id.</u>

      While rejecting the broadest interpretation of the
term, the Court also rejected the position that a "person
aggrieved" encompasses only the employee who engaged in the

17

protected activity.  Id.  The Court noted that if Congress had
intended that narrow definition, the statute would grant relief
to any "person claiming to have been discriminated against"
rather than any "person claiming to be aggrieved."  Id. at 870.

        Ultimately, the Supreme Court interpreted the term
"person aggrieved" in Title VII consistently with the way it has
interpreted that term in the Administrative Procedure Act
("APA"), which "authorizes suit to challenge a federal agency by
any 'person . . . adversely affected or aggrieved . . . within
the meaning of a relevant statute."  Id. (quoting 5 U.S.C. §
702).  The Court had previously interpreted the APA's language
to "establish[] a regime under which a plaintiff may not sue
unless he 'falls within the "zone of interests" sought to be
protected by the statutory provision whose violation forms the
legal basis for his complaint.'"  Id. (quoting Lujan, 497 U.S.
at 883).

        Applying that interpretation to Title VII, the Supreme
Court held that the term "aggrieved" in Title VII confers
standing on any plaintiff whose injury falls within the "zone of
interests" of the statute, or in other words, on "any plaintiff
with an interest 'arguably [sought] to be protected by the
statutes,' while excluding plaintiffs who might technically be
injured in an Article III sense but whose interests are
unrelated to the statutory prohibitions in Title VII."  Id.

18

(quoting <u>Nat'l Credit Union Admin. v. First Nat. Bank & Trust
Co.</u>, 522 U.S. 479, 495 (1998)) (alteration in original).

   In applying that test to the facts before them, the
Court went on to conclude "that Thompson falls within the zone
of interests protected by Title VII." <u>Id.</u>  The Court concluded
that "the purpose of Title VII is to protect employees from
their employers' unlawful actions," and because Thompson was an
employee, he was within the zone of interests sought to be
protected by the statute.  <u>Id.</u>

   Because the Supreme Court in <u>Thompson</u> was interpreting
the same language, and indeed the same enforcement statute, that
applies to claims under Title I of the ADA, the Supreme Court's
interpretation applies here.  Thus, Title I confers standing to
bring suit on a broader class than only "qualified individuals,"
but on a narrower class than anyone with Article III standing.
It confers standing on anyone claiming discrimination on the
basis of a disability who has suffered an injury that falls
within the "zone of interests" protected by Title I of the ADA.

   In order to determine whether PMTA has a cause of
action under Title I of the ADA, therefore, the Court must
examine whether the PMTA's interests are within the zone of
interests of that statute.  The Union argues that the interests
that PMTA seeks to protect are directly conflict with Title I's
purpose of protecting qualified individuals:

> In the Complaint, the PMTA reveals its true motive in
> pursuing this action.  The PMTA claims that its
> Employer Members are harmed in that they are
> "required" to pay workers' compensation benefits to
> employees who could be working with accommodations.
> While the Union does not agree with this averment, it
> is a clear indication that the PMTA has no interest in
> protecting the rights of qualified individuals.  To
> the contrary, the PMTA seems more interested in
> stripping those employees of rights.

Def.'s Mot. 5 n.2.  The Court agrees with the Union.  PMTA has

failed to show that it falls within the zone of interests of

Title I of the ADA.  PMTA addresses the issue in only one

conclusory statement, in which it asserts that "PMTA's grievance

falls within the zone of interests which are regulated by the

ADA."  Pl.'s Opp'n 6.

        The purpose of Title I of the ADA is to protect

disabled employees from adverse employment decisions.  Congress

made extensive findings regarding discrimination suffered by

disabled individuals, see 42 U.S.C. § 12101, and explicitly

provided that the purposes of Title I are:

> (1) to provide a clear and comprehensive national
> mandate for the elimination of discrimination against
> individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable
> standards addressing discrimination against
> individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a
> central role in enforcing the standards established in
> this chapter on behalf of individuals with
> disabilities; and

    (4) to invoke the sweep of congressional authority,
    including the power to enforce the fourteenth
    amendment and to regulate commerce, in order to
    address the major areas of discrimination faced day-
    to-day by people with disabilities.

42 U.S.C. § 12101(a).

        The legislative history of the statute also makes

clear that the focus of Title I is on protecting disabled

individuals who have been discriminated against in the job

market:

        The underlying premise of this title is that persons
        with disabilities should not be excluded from job
        opportunities unless they are actually unable to do
        the job.  The requirement that job criteria actually
        measure skills required by the job is a critical
        protection, because stereotypes and misconceptions
        about the abilities and inabilities of persons with
        disabilities continue to be pervasive.  Discrimination
        occurs against persons with disabilities because of
        stereotypes, discomfort, misconceptions, and fears
        about increased costs and decreased productivity.

H.R. REP. 101-485 (III), at 30 (1990).

        Thus, Title I is meant to prohibit employers from

engaging in certain discriminatory practices and to protect

employees and potential employees who have disabilities.  There

is no language in Title I, its legislative history, or in the

EEOC's regulations that indicates that Title I protects the

interests of employers.  See Lane v. U.S. Steel, 871 F. Supp.

1434, 1437 (N.D. Ala. 1994) ("[I]t is unthinkable that Congress

enacted the ADA for the special benefit of a class of employers.

To the contrary, the ADA, like Title VII, is designed to protect

                                21

employees from adverse employment decisions motivated by discrimination.") (emphasis in original).

Thus, without examining the detail of the specific interests asserted by the PMTA, the PMTA and the Member Employers are not part of a class that is protected by Title I of the ADA.[5]  The ADA does not protect employers; it protects employees and applicants from employers.  The ADA imposes duties and obligations on employers; it does not confer any rights or protections on them.  The PMTA's claims, therefore, are outside the zone of interests of Title I of the ADA.

The specific injuries alleged by the PMTA and the Member Employers fail the zone of interests test as well.  The Union is correct in that PMTA's interest in not paying disability and workers' compensation benefits to employees who are entitled to those benefits is contrary to the purpose of the ADA.  The ADA does not protect employers from paying benefits to disabled employees.  It protects disabled employees from discriminatory practices of their employers.

_____

[5] "Within limits, it may be helpful to frame the question [of whether an interest is within the zone of interests of a statute] by asking whether a group of persons is within the zone of interests to be protected by a statute or constitutional provision.  Regulation often is designed as much to protect persons as to protect more abstract 'interests.'"  13A Fed. Prac. & Proc. Juris. § 3531.7 (3d ed.) § 3531.7.

The PMTA's interest in engaging in the "interactive process" is also not within the zone of interests protected by the ADA.  The ADA prohibits employers from discriminating against a qualified individual on the basis of disability.  42 U.S.C. § 12112(1).  Title I specifically prohibits employers from "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  42 U.S.C. § 12112(b)(5)(A).  The ADA thus imposes an obligation on employers to make reasonable accommodations, under certain circumstances, for an otherwise qualified individual's disability.  Id.; 29 C.F.R. § 1630.9(a), (e).

The EEOC regulations indicate that, in order "[t]o determine the appropriate accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation."  29 C.F.R. § 1630.2(o)(3).  The Third Circuit has "repeatedly held that an employer has a duty under the ADA to engage in an 'interactive process' of communication with an employee requesting an accommodation so that the employer will be able to ascertain whether there is in fact a disability and,

23

if so, the extent thereof, and thereafter be able to assist in identifying reasonable accommodations where appropriate." Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 771 (3d Cir. 2004) (emphasis added). An employer's duty to engage in the interactive process is not triggered until an employee requests accommodations or assistance for his or her disability. Id. at 771-72.

The ADA does not confer a right on employers to engage in an interactive process, nor does it guarantee that an employer will be able to engage in an interactive process. Rather, the interactive process is a duty imposed on employers, which is only triggered when an employee requests accommodation. As such, the ADA does not protect an employer's right or ability to engage in the interactive process. It protects employees from discrimination by requiring employers to provide reasonable accommodations to qualified disabled employees through engaging in the interactive process. Thus, this interest asserted by the PMTA is not within the zone of interests of the statute.

Although PMTA and the Member Employers may be aggrieved by the Union's 100% healed policy, they are not aggrieved in a sense that is within the zone of interests of Title I of the ADA. Rather, this claim is more akin to the "absurd consequences" that the Supreme Court anticipated if it broadly conferred standing on plaintiffs under Title VII. See

24

Thompson, 131 S. Ct. at 869 ("[A] shareholder would be able to sue a company for firing a valuable employee for racially discriminatory reasons, so long as he could show that the value of his stock decreased as a consequence.").  Because Title I of the ADA does not protect employers, and more specifically does not (1) protect an employer from its duty to pay disability and workers' compensation benefits or (2) guarantee an employer's ability to engage in the interactive process, PMTA's asserted interests are not within the zone of interests of the ADA.  PMTA and its Member Employers therefore do not have a cause of action under Title I of the ADA.

IV.   Conclusion

        For the reasons explained above, the Court concludes that the plaintiff lacks standing under Article III of the Constitution and under Title I of the ADA.  Even if the Court were to allow the plaintiff to amend the complaint, the PMTA would not have a cause of action under Title I of the ADA.  The Court will therefore dismiss the complaint with prejudice.

        An appropriate order shall issue separately.